Barry A. TAYLOR, Plaintiff,

v.

COUNTY OF FLUVANNA, VIRGINIA, et al., Defendants.

No. Civ.A. 3:98CV00106.

United States District Court, W.D. Virginia, Charlottesville Division.

Nov. 5, 1999.

Dexter Brock Green, (Jones & Green), Charlottesville, VA, for plaintiff Taylor.

William F. Etherington, (Beale, Balfour, Davidson & Etherington, P.C.), Richmond, VA, Frederick W. Payne, (Fluvanna County Attorney), Charlottesville, VA, for defendant Fluvanna County.

John Adrian Gibney, Jr., (Shuford, Robin & Gibney, P.C.), Richmond, VA, for defendant Sheriff Richardson.

## OPINION

MOON, District Judge.

Defendants County of Fluvanna and Fluvanna County Sheriff Gordon Richardson filed a motion for summary judgment against Plaintiff Barry A. Taylor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff filed a cross-motion for summary judgment against both defendants. In an order dated September 13, 1999, this Court granted Defendant Fluvanna County's motion for summary judgement. Subsequently, this Court determined that it would grant summary judgment for plaintiff against Defendant Sheriff Richardson and a hearing was held on damages. This opinion explains this Court's order of September 13 and its subsequent decision to grant summary judgment for plaintiff against Richardson. In addition, and for the reasons set forth below, plaintiff shall be awarded full wage damages, liquidated damages in an amount equal to wage damages, attorney's fees, and costs against Richardson.

## FACTS

Plaintiff Barry A. Taylor has been employed as a Fluvanna County deputy sheriff since September, 1992. Taylor worked under Sheriff Gordon Richardson, who had been Fluvanna County's sheriff since January 1, 1987. Under Virginia law, sheriffs are independent constitutional officers whose power does not derive from the state or county. Va. Const. art. VII, § 4. As an independent constitutional officer, the county sheriff has the sole discretion to hire and fire his deputies.

Shortly after Richardson was elected sheriff, he became aware that the wage and overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, were applicable to his deputy sheriffs. At that time, he attended a training session in Richmond to learn the proper way to pay his deputies under the FLSA. Up until that point, Fluvanna County deputy sheriffs had been paid solely on the basis of a calendar month. However, Richardson learned that deputy sheriffs, like other law enforcement officers, were eligible to be paid overtime on the basis of a 28–day work cycle. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.211(c). Under this system, deputies would be paid overtime for all hours worked in excess of 171 during a 28–day period instead of all hours worked in excess of 171 during a calendar month.

When Richardson returned from the Richmond training session, he proposed changing his deputies' work cycle with a Fluvanna County administrator. These discussions were to no avail, as the administrator informed him that the county would not change the work periods or pay cycles of deputy sheriffs because it was too much trouble to treat them any differently from other county employees, all of whom were paid on a monthly basis. Accordingly, the proposal to pay the deputies under a 28–day work cycle was never implemented. As a result, Taylor's only regularly recurring work period has been the calendar month; his pay, overtime, vacation time accrual, and pay periods were all computed on a monthly basis. Only after this lawsuit was filed did the county accommodate the sheriff's department by switching to a 28–day work cycle for paying its deputies' overtime.

While the deputy sheriffs' work period did not change, the accounting mechanism used to pay them did. The county paid deputy sheriffs but was reimbursed by the Commonwealth's Compensation Board. Traditionally, payments for overtime were made directly from the county's budget.

However, approximately five or six years ago the county started to allocate to Richardson, as part of the sheriff's department's budget, money for him to pay deputies' overtime. From its inception this new budgetary method proved to be problematic, as Richardson never had enough money in this discretionary budget category to pay all deputies' accrued overtime for that budget year. Only when Richardson received his discretionary budgetary allowance for the following fiscal year was he able to pay his deputies' accrued overtime from the previous fiscal year. This system progressively left Richardson with less money to pay for his deputies' overtime, thus further compounding his budgetary problems.

At the time of the filing of this lawsuit, Taylor was owed overtime earned and accrued from October, 1997 through January, 1998 and from July, 1998 through November, 1998, on the basis of all hours worked in excess of 171 in those calendar months. On several occasions, Taylor had approached both Richardson and county officials about timely payment of overtime. These discussions became more frequent as both the total amount of accrued overtime increased and the length of time between overtime being earned and paid increased. However, neither Richardson nor county officials gave Taylor any assurances of when or how he would be paid.

As a result of the county's and the sheriff's department's inaction, Taylor filed this lawsuit in November, 1998. Only after the filing of this lawsuit did deputies begin to be paid on the basis of a 28–day work period. However, the county attempted to apply this new 28–day work cycle retroactively to July 1, 1997 and paid Taylor for his previously-accrued overtime on that basis. Thus, Taylor has been paid all of the overtime that he would have been owed had the county allowed Richardson to adopt a 28–day work cycle pursuant to section 207(k) in the first place. In this lawsuit Taylor seeks the differential; that is, the amount of overtime he claims that

he is owed computed on a calendar-month basis minus the funds that he has recently been paid based on the county's attempt to retroactively apply section 207(k).

This Court has already dismissed plaintiff's claims against the Fluvanna County Board of Supervisors and the Fluvanna County Administrator. *See* Order (Mar. 23, 1999). The remaining defendants in this lawsuit are Fluvanna County and Sheriff Richardson. This opinion addresses the granting of summary judgment for Fluvanna County against Taylor, the granting of summary judgment for Taylor against Sheriff Richardson, and the issue of liquidated damages.

## SUMMARY JUDGMENT STANDARD

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). When the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with evidence to establish the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

*1. Summary Judgment for Fluvanna County against Plaintiff*

■ There is a four-factor test for being an "employee" under the FLSA. "An 'employer' under the Act is someone who (1) has the power to hire and fire the employee, (2) supervises and controls the employee's work schedule or conditions of employment, (3) determines the rate and method of payment, and (4) maintains employment records." *Brickey v. County of*

*Smyth, Va.,* 944 F.Supp. 1310 (W.D.Va. 1996) (*citing Hale v. Arizona,* 967 F.2d 1356 (9th Cir.1992)). Under this test, no one factor is dispositive; instead, courts should consider economic realities and the totality of the circumstances. *See id.* The terms of the statute are broad and are designed to include many types of employers and employees. In the end, though, "an employer does not include one who does not 'hire and fire employees, control the methods of operations . . ., set hourly wages, or control the payroll.'" *Id.* (*quoting Dole v. Continental Cuisine, Inc.,* 751 F.Supp. 799, 802 (E.D.Ark.1990)).

■ In this case, Fluvanna County has insufficient control over plaintiff, his working conditions, his workplace, and his pay to make it his employer. Specifically, the county does not (1) hire, fire, supervise, or discipline deputy sheriffs; (2) supervise or control deputies' work schedules or conditions of employment; (3) set rates of pay or method of employment; or (4) maintain employment records other than payroll-related records. The strongest factor that applies to the county is its maintenance of employment records by collecting and storing the deputy sheriffs' time cards. However, mere maintenance, by itself, of employee records is not control sufficient to bestow employer status under the four-part test above. *See id.* at 1315. Moreover, while the county prevented Sheriff Richardson from implementing a 28–day work cycle, that action, by itself, does not constitute a method of supervision or control of the deputies' work schedules or conditions of employment. Instead, day-to-day shift scheduling, job duties, and method of job performance were all under the exclusive control of Sheriff Richardson. Finally, the county's knowledge of plaintiffs' overtime and leave situation, without the exercise of any control, does not make the county a responsible actor. *See id.* at 1316. Since there is no issue of material fact as to the county's role in deputy sheriffs' employment, and since the county legally does not exercise control sufficient to

make it an employer under the FLSA, Fluvanna County's motion for summary judgment against plaintiff is granted.

In its motion for summary judgment, Fluvanna County also advanced the Supreme Court's recent holding in *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), as a basis for granting its motion. *Alden* held that states enjoy sovereign immunity from private suits in their own state courts. Since we have already found that Fluvanna County is not an employer as defined by the FLSA, we do not reach this line of argument.

*2. Summary Judgment for Plaintiff against Sheriff Richardson*

 Under the FLSA, the burden of proving an entitlement to an exemption or partial exemption is on the employer. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Hodgson v. J.W. Lyles, Inc.*, 335 F.Supp. 128, 131 (D.Md.1971), *aff'd*, 468 F.2d 625 (4th Cir.1972). Exemptions should be narrowly construed by courts in order to promote the remedial purposes of the FLSA. *Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir.1994); *Brennan v. Sugar Cane Growers Co-op.*, 486 F.2d 1006 (5th Cir.1973). Finally, the FLSA is to be interpreted liberally in the employee's favor in order to promote its remedial purposes. *Kermit C. Sanders Lodge No. 13 v. City of Smyrna, Ga.*, 862 F.Supp. 351, 355 (N.D.Ga.1994).

 Under the FLSA, covered employers generally must pay their covered employees overtime for all hours worked in excess of 40 during the employee's work week. 29 U.S.C. § 207(a)(1). However, there is an exemption for law enforcement employees:

No public agency shall be deemed to have violated ... this section with respect to the employment of any employee in ... law enforcement activities ...

if ... (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period, the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 171 ... bears to 28 days, compensation of a rate not less than one and one half of his regular rate at which he is employed.

29 U.S.C. § 207(k). This provision is interpreted by Department of Labor regulations that define the term "work period" as:

any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. Once the beginning and ending of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within the period. The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.

29 C.F.R. § 553.224. Thus, there is a two part test: (1) whether the employer has established a 207(k) work period and (2) whether such work period is "regularly recurring." *McGrath v. City of Philadelphia*, 864 F.Supp. 466, 474 (E.D.Pa.1994); *Nixon v. City of Junction City, Kan.*, 707 F.Supp. 473, 479 (D.Kan.1988).

There are several ways an employer can establish a regularly recurring work period for purposes of section 207(k). For example, a public declaration of intent to adopt a 207(k) work period is sufficient. *McGrath*, 864 F.Supp. at 476; *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145,

1154 (10th Cir.1992) (stating that work period is adopted where specific schedule is "put into effective operations" by employer). Alternatively, implementation of a work period in which employees actually work a regularly recurring cycle of between 7 and 28 days can establish a section 207(k) work period, even if there is no public announcement. *McGrath*, 864 F.Supp. at 476; *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 806 (11th Cir.1992) (holding that work period of seven days could be established by uncontradicted evidence that employees worked regular seven day cycles).

Under either method, Sheriff Richardson has not established a 28–day work period for purposes of section 207(k). He neither publicly declared that a 28–day work period was being established for his deputies nor established one in practice. Instead, pay periods, duty cycles, and vacation and sick day accruals were all based on the calendar month. Moreover, the verbal compensation agreement between Richardson and Taylor was that Taylor would be paid overtime on the basis of hours accrued per calendar month. While Richardson may have discussed adopting a 28–day work period with county administrators, they ultimately rejected his proposal and mere discussion, by itself, is insufficient to establish the section 207(k) exemption. *See Atana v. Missouri Department of Corrections*, 2 WH Cases 2d (BNA) 272, 1994 WL 510094 (W.D.Mo. 1994). Because of the county's refusal to allow Richardson to adopt a 28–day work period, deputies continued to work pursuant to and accrue overtime hours based on the calendar-month.[1]

While the county's actions may have placed Sheriff Richardson between a rock and a hard place, his hands were not completely tied. He knew the requirements of the FLSA, but did not press the issue with the county or consult a lawyer concerning his legal obligations.[2] Instead, he made a knowing, conscious, and deliberate choice to allow his deputies to accumulate overtime on a calendar month basis, despite the budget limitations that he faced. Sheriff Richardson also had the ability to move money from one budget category to another for any reason. While the choice between fully-funding his deputies' overtime versus providing crucial law enforcement services may not have been palatable, the county's determination to not allow Richardson to implement a 28–day work period placed the ball squarely in his court. Whatever the merits of the county's decision (which they later reversed once this lawsuit was filed), Richardson, as an elected constitutional officer, had the responsibility to allocate his department's funds pursuant to federal law. He chose to not pay his deputies the overtime that they had legitimately accrued so that he could instead provide the county's residents with a full slate of law enforcement services *despite* the county's refusal to allow him to implement the most cost-efficient method of structuring payment. In so doing, he knowingly and intentionally violated the Fair Labor Standards Act.

Since Sheriff Richardson cannot prove the establishment of a regularly-recurring 28–day work period, he is not entitled to a section 207(k) exemption and must pay overtime for all hours worked in excess of 40 per work week. *Maldonado v. Admin-*

---

1. Defendant has attempted to characterize the issue of plaintiff's entitlement to overtime on a calendar-month basis as a "miscalculation." Defendant's argument states that he is entitled to utilize a 28–day work period under section 207(k) and that any prior payments of overtime on a calendar-month basis constitute a miscalculation inasmuch as plaintiff was paid for more overtime than he would have received under section 207(k). This Court rejects that viewpoint for the reasons set forth in the opinion; namely, that a section 207(k) work period must be affirmatively established in order to be claimed. Defendant has not done so here.

2. In fact, Richardson sympathized with the county's position.

*istracion de Correccion,* 1 WH Cases 2d (BNA) 913, 915, 1993 WL 269650 (D.P.R. 1993). While the county's failure to allow Richardson to implement a 28-day work cycle means that Taylor will be paid more overtime than he would have been entitled to had a 28-day cycle been adopted, the proper baseline is what the statute requires, not what the sheriff's department could have achieved had the county cooperated. Moreover, an employer may not adopt a 28-day work period and enforce it retroactively. *See Lamon,* 972 F.2d at 1151-54 (evidence showed city had established a twenty-eight day work period pursuant to § 207(k)); *Maldonado,* 1 WH Cases 2d (BNA) at 914-15, 1993 WL 269650 (where defendant had not chosen earlier to avail itself of the provisions of § 207(k), its "belated effort to invoke Section 7(k) [was] merely an attempt to reduce the number of hours for which it must pay the plaintiffs an overtime wage"); *Ackley v. Department of Corrections,* 844 F.Supp. 680, 687 (D.Kan.1994) (holding that employer could not avail itself of § 207(k) where it did not provide it had adopted a § 207(k) workweek by clear and affirmative evidence; employer's § 207(k) argument "appear[ed] to have been raised only after suit was filed in an effort to avoid liability"). *But cf. Feaser v. City of New York,* 2 WH Cases 2d (BNA) 1324, 1995 WL 350848 (S.D.N.Y.1995) (in case where defendant originally but mistakenly believed certain covered employees were entirely exempt from the overtime requirements of § 207, defendant's failure to adopt § 207(k) work period or to pay those employees according to its terms does not prevent defendant from calculating overtime damages pursuant to § 207(k)); *Martin v. Coventry Fire Dist.,* 981 F.2d 1358 (1st Cir.1992) (holding that where a violation of the maximum hours provisions of § 207(k) is shown, employees are to be compensated under its terms). The Department of Labor has stated as much:

> It continues to be our position that § 7(k) must be affirmatively claimed to take advantage of its provisions. An employer must designate or otherwise objectively establish the work period for each employee (or group of employees) for whom § 7(k) is claimed and pay the affected employees in accordance with its provisions. It is our view that a claim to the § 7(k) exemption may not be objectively made retroactively. Thus, it is our position that an employer is not relieved from § 7(a) overtime compensation unless § 7(k) has been claimed and affected employees have actually been paid in accordance with its provisions. We consider *Coventry* to be incorrectly decided.

Secretary of Labor Letter Ruling (Jan. 3, 1994), *quoted in Feaser,* 2 WH Cases 2d (BNA) at 1329 n. 7, 1995 WL 350848. Thus, plaintiff is entitled to wage damages that equal the differential between what he was owed for all hours worked in excess of 171 during a calendar month minus the amount that he has already been paid for all hours worked in excess of 171 during a 28-day period. That differential equals $6,688.24.

■ One additional liability issue confronts this Court. In addition to not establishing a 28-day work cycle, Sheriff Richardson violated the FLSA by not paying his employees on time. Richardson has admitted to paying "overtime as well as he could," but he generally ran out of funds for each year and had to make up the deficit in the following year. The Sheriff's reasons for paying overtime late resulted from the compensation scheme that existed between the sheriff's department, Fluvanna County, and the Commonwealth. Generally, the county computed deputy sheriffs' hours, issued them paychecks, and was reimbursed by the Commonwealth's Compensation Board. While the Compensation Board reimbursed the county for salaries, it did not fund overtime pay. Instead, overtime pay was paid out of county funds through an allocation directly to the sheriff's budget. Unfortunately, the county consistently underfunded the applicable budget category; as a

result, Sheriff Richardson was never able to pay his deputies for all of their accrued overtime in any given fiscal year until he received his budgetary allowance for the following fiscal year; he would the use the money in the discretionary budget category for payment of overtime accrued during the previous fiscal year before he would use it for the current fiscal year's overtime.

As noted above, Richardson had control over his budget, including the ability to switch money between line items. Despite that ability, Richardson chose not to timely pay his deputies' overtime, but instead waited for the following fiscal year's new discretionary allocation. This system created larger and larger amounts of overtime owed to Taylor and longer periods of time before accrued and earned overtime was actually paid. In failing to timely pay Taylor's overtime, Richardson violated the FLSA. *See Keen v. Mid–Continent Petroleum Corp.*, 63 F.Supp. 120 (N.D.Iowa 1945), *aff'd*, 157 F.2d 310 (8th Cir.1946) (accrued and earned overtime must be paid on the next regular pay day after the overtime has been earned or as soon as possible thereafter).

### 3. Liquidated Damages

■ The FLSA provides that an aggrieved party is entitled to liquidated damages equal to wage damages unless the defendant acted in good faith and had reasonable grounds for believing that his acts or omissions were not violations of the FLSA. 29 U.S.C. §§ 216(b), 260; *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir.1992). "The language in the statute is mandatory" and places upon the defendant a " 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.' " *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir.1994) (*quoting Richard v. Marriott Corp.*, 549

F.2d 303, 306 (4th Cir.1977)). Strictly speaking, though, liquidated damages *are* considered compensatory rather than punitive in nature. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). They serve to compensate a prevailing plaintiff for damages that are either obscure or difficult to prove. *See id.*

Sheriff Richardson has admitted that he knew he was violating the FLSA. He failed to promptly pay his deputies' overtime despite increasing amounts of money owed and increasing time periods between overtime accrual and payment. Moreover, he had the ability to move funds from one budget category to another. His failure to do so under the justification of protecting the public safety is sympathetic but does not rise to the standard of either good faith or a belief that his acts were not violations of the FLSA. Instead, by not properly paying his deputies he knowingly and intentionally violated the Act. Under these circumstances, liquidated damages in an amount equal to wage damages are appropriate. Accordingly, plaintiff will be awarded $6,688.24 in liquidated damages.

### CONCLUSION

Defendant Fluvanna County's motion for summary judgment has been granted against plaintiff. Plaintiff's motion for summary judgment against defendant Sheriff Richardson is hereby granted. Wage damages of $6,688.24 and liquidated damages of $6,688.24 are hereby awarded, with total damages equaling $13,376.48. In addition, since plaintiff is the prevailing party, he is entitled to reasonable attorney's fees and costs under the statute from defendant Sheriff Richardson. *See* 29 U.S.C. § 216(b).

### ORDER

Defendants County of Fluvanna and Fluvanna County Sheriff Gordon Richardson filed a motion for summary judgment against Plaintiff Barry A. Taylor pursuant to Rule 56 of the Federal Rules of Civil

Procedure. Plaintiff filed a cross-motion for summary judgment against both defendants. In an Order dated September 13, 1999, this Court granted Defendant Fluvanna County's motion for summary judgment. Subsequently, this Court determined that it would grant summary judgment for plaintiff against Defendant Sheriff Richardson and a hearing was held on damages.

For the reasons set forth in the following Opinion, it is hereby

ADJUDGED AND ORDERED

that plaintiff's motion for summary judgment against Defendant Sheriff Richardson shall be, and hereby is, granted. Wage damages, liquidated damages, attorney's fees, and costs shall be awarded to plaintiff as set forth in the attached Opinion.

The Clerk of the Court is hereby directed to send a certified copy of this Order and attached Opinion to all counsel of record and strike the case from the docket.